UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANGELA SIDDELL,

                              Docket No.:

              Plaintiff,

   -against-                               **COMPLAINT**

JETBLUE AIRWAYS CORPORATION,          **JURY TRIAL DEMANDED**

              Defendant.
------------------------------------------------------------------X

       Plaintiff Angela Siddell ("Plaintiff"), by and through her attorneys The Dweck Law Firm, LLP, complains of Defendant JetBlue Airways Corporation ("Defendant" and/or "JetBlue"), and respectfully alleges to this Court as follows:

## NATURE OF THE ACTION

       1.     Plaintiff brings this action to recover damages for physical injuries that she was caused to sustain in an accident on or about October 31, 2023 as a passenger on board JetBlue's international flight from John F. Kennedy International Airport in Queens, New York to Liberia International Airport in Costa Rica.

## JURISDICTION AND VENUE

       2.     Jurisdiction is proper pursuant 28 U.S.C. § 1331 because Plaintiff's Complaint asserts a claim under Article 33 of the Convention for the Unification of Certain Rules for International Carriage by Air, concluded at Montreal, Canada on May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (the "Montreal Convention"). Jurisdiction is also proper pursuant to 28 U.S.C. § 1332 because Plaintiff is a British citizen who resides in Jersey, Channel Islands, and Defendant is a foreign business corporation with it principal headquarters located in this district, and the amount in controversy is in excess of $75,000.00.

3. Venue is proper in this district pursuant to Article 33, Section 1 of the Montreal Convention. Venue is also proper in this district pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here, or, alternatively, pursuant to 28 U.S.C. § 1391(b)(3) because Defendant may be found in this district.

## PARTIES

4. Plaintiff is now, and at all times hereinafter mentioned was, a seventy-four-year-old British Citizen and resident of Jersey, the largest of the Channel Islands.

5. Upon information and belief, and at all times hereinafter mentioned, Defendant JetBlue is a foreign business corporation, organized under the laws of the State of Delaware and registered and doing business in the State of New York, with its principal executive offices located at 27-01 Queens Plaza North, Long Island City, New York 11101.

6. Upon information and belief, and at all times hereinafter mentioned, Defendant JetBlue is an air carrier that provides aviation transportation services to passengers and operates aircraft to and from a number of domestic and international locations, including John F. Kennedy International Airport ("JFK Airport") in Queens, New York.

7. Upon information and belief, and at all times hereinafter mentioned, Defendant JetBlue is a commercial air carrier engaged in international carriage and subject to the Montreal Convention.

8. Upon information and belief, and at all times hereinafter mentioned, Defendant JetBlue maintains offices and regularly conducts business at JFK Airport and its corporate headquarters located at 27-01 Queens Plaza North, Long Island City, New York 11101.

9. Upon information and belief, and at all times hereinafter mentioned, Defendant JetBlue regularly conducts business in the City and State of New York, regularly solicits business

in the United States, and derives substantial revenue therefrom and/or otherwise has invoked the benefits and protection of the laws of the United States and the State of New York.

10. The claims asserted in this action arise out of a contract of carriage for international air transportation on Defendant JetBlue's aircraft from JFK Airport in Queens, New York to Liberia International Airport, also known as Daniel Oduber Quiros International Airport ("LIR"), in Costa Rica.

## FACTUAL ALLEGATIONS

11. On or about October 5, 2023, Plaintiff and her partner purchased tickets for carriage on Defendant's aircraft from JFK to LIR and paid the fare for such international carriage.

12. Plaintiff, who is seventy-four-years old, planned the trip to Costa Rica to celebrate her upcoming retirement and transition to a full-time grandmother of four.

13. On or about October 31, 2023, Plaintiff used her ticket to board JetBlue Flight Number 1691 from JFK to LIR (the "International Flight").

14. After departing from JFK and in the course of the International Flight, Plaintiff got up from her seat to use the lavatory. While Plaintiff was in the lavatory, JetBlue cabin crewmembers walked through the plane collecting refuse from passengers. The JetBlue cabin crewmembers did not collect the cup of tea that was on Plaintiff's tray table.

15. Upon returning to her seat from the lavatory, Plaintiff collected the tea cup, which still contained tea, and stirring spoon, and brought them to the rear of the plane for disposal.

16. Plaintiff was unable to locate a trash receptacle in the rear galley and placed the tea cup and spoon on the countertop in the galley so that they could be disposed of by the JetBlue cabin crew.

17. Immediately upon returning to her seat, a female JetBlue cabin crewmember confronted Plaintiff and accused her of throwing the tea cup in the galley. The female cabin crewmember addressed Plaintiff in an unusually loud and verbally aggressive manner.

18. Plaintiff, a former flight attendant, was taken aback by the verbally aggressive manner in which the female crewmember spoke to her and the crewmember's initiation of the unprovoked and unusual confrontation.

19. The female cabin crewmember continued her aggressive behavior towards Plaintiff, speaking over Plaintiff as she attempted to explain that she had placed her tea cup on the countertop because she was unable to locate a trash receptacle in the galley.

20. Based upon the female cabin crewmember's unusual aggressive and threatening conduct, Plaintiff decided to submit a written complaint to JetBlue and asked the crewmember for her JetBlue employee identification number. The female cabin crewmember refused to provide her name or employee identification number, as did the other cabin crewmembers when asked by Plaintiff.

21. Plaintiff asked the female cabin crewmember for the name of the JetBlue Captain of the International Flight but the crewmember refused to provide the captain's name. Plaintiff's late husband was a civil airline captain as is Plaintiff's youngest son, and it is not uncommon for passengers to request the name of, and to speak to the captain regarding accidents that arise during the course of the flight.

22. Plaintiff asked the JetBlue cabin crew for a complaint form but was told there were none.

23. Plaintiff asked the JetBlue cabin crew for a piece of paper to draft the complaint but was told they had no paper.

24. As a result of the foregoing, Plaintiff began to draft a complaint on the back of an air sickness bag. Plaintiff walked to the rear of the plane to read the name tag of the female cabin crewmember who accosted her for inclusion in the written complaint. The female cabin crewmember repeatedly refused to let Plaintiff see her name tag.

25. The female cabin crewmember grabbed Plaintiff's wrist, while another JetBlue cabin crewmember shoved Plaintiff in the back with great force, pushing Plaintiff's body into the female crewmember. Plaintiff was shoved in the back again by the other JetBlue crewmember causing Plaintiff's head to violently strike one of the aircraft's rear exit doors.

26. Plaintiff was shoved from behind several more times by the JetBlue cabin crewmember causing Plaintiff's head to strike the exit door multiple times and causing Plaintiff to sustain physical injuries, including a black eye, and bruises and swelling of the temple region and other areas of Plaintiff's head.

27. A JetBlue cabin crewmember grabbed Plaintiff's arms and forced them behind Plaintiff's back and handcuffed Plaintiff's wrists. While Plaintiff was handcuffed, a male cabin crewmember physically applied pressure to Plaintiff's torso causing Plaintiff to have extreme difficulty breathing. The cabin crewmembers forcibly moved Plaintiff to the last row of seats on the port side of the plane.

28. Plaintiff complained that she was having difficulty breathing but the JetBlue cabin crewmembers did not respond to Plaintiff's complaints.

29. Plaintiff's partner and travel companion heard Plaintiff's cries in the rear of the plane and approached to find out what was happening. At this time, the JetBlue employee removed his hand from Plaintiff's torso enabling Plaintiff to breathe.

30. Plaintiff repeatedly complained to the crewmembers that the handcuffs were too tight and were causing her great physical pain and bodily injury, but the JetBlue cabin crewmembers did not respond to Plaintiff's complaints.

31. Defendant JetBlue diverted the International Flight to Orlando, Florida where Plaintiff and her partner were forced to exit the plane.

32. Upon landing in Orlando, Plaintiff spoke to a JetBlue representative and provided a statement to the airport police regarding the physical assault and batteries committed by the JetBlue cabin crewmembers in the course of the International Flight and the physical injuries caused to Plaintiff including, but not limited to, a black eye, swollen right shoulder, bone bruises on each wrist and the back of each hand, and injuries to both arms. The police officers cut the handcuffs off Plaintiff and confirmed to Plaintiff that the JetBlue cabin crewmembers secured the handcuffs excessively tight.

33. As a direct and proximate result of the acts of Defendant, its agents and/or servants as aforedescribed, Plaintiff sustained severe bodily injuries, was incapacitated from employment, and suffered pain, suffering, and mental anguish, all of which are continuing.

## AS AND FOR A FIRST CAUSE OF ACTION
### (For Strict Liability Pursuant to the Montreal Convention)

34. Plaintiff repeats and realleges each and every allegation contained within Paragraphs "1" through "33" of the Complaint as though more fully set forth at length herein.

35. At all times relevant hereto, Defendant was and remains a commercial air carrier engaged in International Carriage and is subject to the terms and conditions of the Montreal Convention, including, but not limited Article 17, which imposes absolute liability on carriers for damage sustained by a passenger for bodily injury upon condition only that the accident which caused the injury took place on board the aircraft.

6

36. On or around October 31, 2023, Plaintiff was a passenger on board Defendant's aircraft and was caused to sustain severe bodily injuries in the course of Defendant's International Flight, caused directly and solely by the assault and batteries committed by Defendant, and negligent and/or careless acts of omission and commission of Defendant, its agents and/or servants, without any negligence on the part of Plaintiff or any third-party contributing thereto.

37. As a result of the above, Defendant is strictly liable to Plaintiff for her physical injuries and mental anguish caused by those physical injuries, and all other damages recoverable by Plaintiff pursuant to the Montreal Convention, in an amount to be determined by a jury at the trial of this action.

38. By reason of all of the above, Plaintiff has been damaged in a sum to be determined upon the trial of this action, for which Plaintiff demands judgment against Defendant.

**WHEREFORE**, Plaintiff Angela Siddell demands judgment against Defendant JetBlue Airways Corporation, in a sum to be determined by a jury at the trial of this action, together with interest and the costs and disbursements of this action, and such other and further relief as this Court may deem just and proper.

**THE DWECK LAW FIRM, LLP**
*Attorneys for Plaintiff Angela Siddell*

By: /s/ Christopher S. Fraser
Christopher S. Fraser (CF 7590)
1 Rockefeller Plaza, Suite 1712
New York, New York  10020
Telephone:   (212) 687-8200
Fax:              (212) 697-2521
Email:          cfraser@dwecklaw.com